# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| SHAWN MICHAEL WALTHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-cv-2705-SPM |
| ) | |
| DR. UNKNOWN HASTINGS, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff Shawn Michael Walther for leave to commence this civil action without prepayment of the required filing fee. Having reviewed the motion and the financial information submitted in support, the Court has determined to grant the motion, and assess an initial partial filing fee of $3.11. *See* 28 U.S.C. § 1915(b)(1). In addition, the Court will dismiss defendants Hastings, Halibower, Raymond, Bradford, Arnold, Simpson, Childress, and Syler, and will direct the Clerk of Court to issue process upon defendants Reed, Traschel, Habtemariam, and Gonzalas in their individual capacities.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make

monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly deposit of $15.58, and an average monthly balance of $14.04. The Court will therefore assess an initial partial filing fee of $3.11, which is twenty percent of plaintiff's average monthly deposit.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief under § 1983, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to, *inter alia*, draw upon judicial experience and common sense. *Id.* at 679.

*Pro se* complaints must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, they still must allege sufficient facts to support the claims alleged. *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004); *see also Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (even *pro se* complaints are required to allege facts which, if true, state a claim

2

for relief as a matter of law). Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 914-15. In addition, giving a *pro se* complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is a pretrial detainee at the St. Louis County Justice Center. He brings this action pursuant to 42 U.S.C. § 1983 against twelve defendants: Dr. Unknown Hastings, Corrections Officer Habtemariam, Lieutenants Reed, Raymond, Bradford, Arnold, and Simpson, Captain Traschel, Superintendent Julia Childress, Unit Manager Syler, and nurses Kristy Gonzalas and Ashley Halibower. The complaint spans 44 pages, and contains four counts. Plaintiff sues all of the defendants in an individual capacity.

According to the complaint, plaintiff has suffered from bursitis and sciatica in his left hip since 2012. He has chronic back, left knee, and foot pain, and he also suffers from insomnia and depression.

The allegations in Count I stem from events that occurred from approximately February 2015 through June of 2017. However, plaintiff prefaces Count I with the statement that, when he arrived at the jail on October 20, 2014, he told an unidentified nurse that he needed hip replacement surgery, and that he should be given Vicodin five times per day and should also be given Xanax and Depakote. However, plaintiff was instead given medication to address withdrawal symptoms and hypertension.

In February or March of 2015, plaintiff was seen by a physician's assistant, who prescribed medication. Plaintiff objected to being seen by a physician's assistant and asked for an appointment with a physician, and was seen by Dr. Hastings in March of 2015. Plaintiff complained that his current medication was ineffective, and he told Dr. Hastings that he needed immediate hip replacement surgery. Dr. Hastings told him he had to keep taking his current medication. Plaintiff alleges that Dr. Hastings continued "her methods of treatment for about four more months," but plaintiff was still in pain and had shortness of breath, and so his medications were adjusted. (Docket No. 1 at 12).

In June or July of 2015, plaintiff told Dr. Hastings he was in constant pain, and was depressed. Dr. Hastings prescribed an anti-depressant and exercise, and performed an x-ray. She then sent plaintiff to St. Louis University Hospital ("SLUH"), where another x-ray was performed. Someone at SLUH told plaintiff he needed a hip replacement, and that he should be taking different medications than those prescribed by Dr. Hastings.

Upon plaintiff's return to the jail, he again saw Dr. Hastings, who recommended that plaintiff begin a series of steroid shots in his hip. Plaintiff protested, stating he wanted to have surgery immediately, but Dr. Hastings told him "it's the shots or nothing." *Id.* at 14. Plaintiff received the shots at SLUH, and was able to walk better but his pain was not completely gone. He told Dr. Hastings that he did not want any more shots and wanted an immediate hip replacement, but Dr. Hastings disagreed. She prescribed 5 and then 10 mg. of Vicodin for plaintiff to take at bedtime so that he could be comfortable at night. However, she only allowed him to have it for two months before switching him to Tramadol. Plaintiff protested that Tramadol made him suffer withdrawal symptoms, and insists that he should have been given Vicodin, explaining that he had a unique ability to take Vicodin every two hours on a daily basis.

In November of 2016, plaintiff was sent to SLUH for another steroid injection. He told people at SLUH that the shots allowed him to walk better for about six weeks, but still had pain. Plaintiff claims that people at SLUH told him he needed a hip replacement. Plaintiff states that Dr. Hastings refused plaintiff's request for a multivitamin. Finally, plaintiff states that he received a third steroid injection on June 29, 2017.

The allegations in Count II stem from events that occurred on June 12, 2017 as plaintiff was being relocated to solitary confinement. Plaintiff told the officers that he could not walk up the stairs due to hip pain. In response, Reed pepper sprayed him, Traschel tased him, and Habtemariam threw him down onto his stomach. Plaintiff was handcuffed, and Habtemariam and another guard began to march him up the stairs over his protests. Once on the staircase, Habtemariam lifted plaintiff up and forcefully threw him down onto his left side, and plaintiff fell all the way down the stairs. He was then placed in a restraint chair, and Habtemariam intentionally rocked the restraint chair to the left, causing plaintiff to hit his head and left hip.

The allegations in Count III also stem from events that occurred on June 12, 2017, while plaintiff was confined to the restraint chair. Plaintiff alleges that Halibower tried to wipe his face with a tissue, but he pushed her away. He told her his handcuffs were too tight, and she tried to look, and then had an inaudible conversation with Reed. Plaintiff later heard Reed tell Halibower that if she was disturbed by what she saw, she should find another job. Later, Reed brought Gonzalas in to check to see if plaintiff's handcuffs were too tight. Plaintiff claims that Gonzalas intentionally and maliciously tightened his handcuffs until his hands bled, and that he suffered nerve damage to his thumb and wrist as a result. Unidentified individuals later took plaintiff from the restraint chair to solitary confinement. When the cuffs were removed, plaintiff noticed that his wrists were discolored and his hands were stiff.

5

In Count IV, plaintiff claims that the jail's law library is old, outdated and so far below contemporary standards of decency that it is unconstitutional. He states that he has asked Syler to address the matter, and that "grievances on the matter go unanswered." *Id.* at 34.

In parts of the complaint, when explaining the relief he seeks, plaintiff states in conclusory fashion that Raymond, Arnold, Simpson and Halibower failed to report wrongdoing, and that Bradford failed to follow a handcuffing procedure. Plaintiff also states that Childress should know what is going on at the jail. Plaintiff seeks monetary relief, and various forms of injunctive relief.[1]

**Discussion**

The Court first considers plaintiff's allegations in Count I. Because plaintiff is a pretrial detainee, his claims regarding inadequate medical care are analyzed under the Fourteenth Amendment rather than the Eighth Amendment. However, because the Fourteenth Amendment gives pretrial detainees at least as great protection as that given to convicts under the Eighth Amendment, courts have consistently applied the Eighth Amendment deliberate indifference standard to pretrial detainee claims involving prison conditions or the denial of medical care. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014), *Butler v. Fletcher*, 465 F.3d 340, 344-45 (8th Cir. 2006).

To state a claim for inadequate medical care under the Eighth or Fourteenth Amendment, a prisoner or detainee must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle*, 429 U.S. at 106; *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). A claim of deliberate indifference involves both an objective and a subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted). The

---

[1] Insofar as plaintiff asks this Court to suspend or fire any defendant from his or her job, strip any defendant of a professional license, or criminally prosecute, fine or imprison any defendant, he is advised that those remedies are unavailable.

6

plaintiff must demonstrate (1) that he suffered an objectively serious medical need, and (2) the defendant actually knew of but deliberately disregarded that need. *Id.* A "serious medical need" is "one that has been diagnosed by a physician requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011).

Plaintiff believes that only a hip replacement will relieve his pain and that he should be given only the medication he requests, and that Dr. Hastings's refusal to authorize the surgery or comply with his medication requests amount to deliberate indifference to his pain. However, plaintiff's allegations establish only that Dr. Hastings's decisions were an exercise of medical judgment, not deliberate indifference. According to the complaint, Dr. Hastings repeatedly saw plaintiff for medical evaluation, performed testing to determine the proper course of treatment, repeatedly sent plaintiff to SLUH to receive steroid injections, listened to his complaints, and adjusted his medications. Taken as a whole, the complaint reflects only plaintiff's disagreement with Dr. Hastings's treatment decisions, his belief he would receive better care elsewhere, or, at most, that Dr. Hastings was negligent or committed medical malpractice. Such allegations do not establish a constitutional violation. *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) ("a mere disagreement with treatment decisions does not rise to the level of a constitutional violation"); *Long v. Nix*, 86 F.3d 761, 765-66 (8th Cir. 1996) (internal citations omitted) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment"); *Estelle*, 429 U.S. at 106 (medical malpractice does not amount to a claim of constitutional dimension "merely because the victim is a prisoner"). Dr. Hastings will therefore be dismissed from this action.

7

Turning to Counts II and III, the Court has determined that plaintiff's allegations against Reed, Traschel, Habtemariam, and Gonzalas survive initial review, and will be allowed to proceed. Regarding Halibower, however, plaintiff alleges only that she tried to wipe his face with a tissue, looked at his handcuffs, talked to Reed, and was told she may need to go work elsewhere. These allegations do not state claims of constitutional significance.

Plaintiff also names Raymond, Bradford, Arnold, and Simpson as defendants. However, he merely lists their names and then states such things as "inaction to report" and "failure to follow double locking cuff procedure and failure to report." (Docket No. 1 at 23). Plaintiff also states, in conclusory fashion, that Halibower failed to report an incident. Construed liberally, plaintiff's allegations are merely the unadorned, "the-defendant-unlawfully-harmed-me" accusations that the Supreme Court has found deficient. *Iqbal*, 556 U.S. at 678. Even *pro se* complaints are required to allege facts which, if true, state a claim for relief as a matter of law, *Martin*, 623 F.2d at 1286, and this Court will not "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone*, 364 F.3d at 914-15. Plaintiff is required to allege facts showing how each named defendant was directly involved in or personally responsible for the alleged violations of his constitutional rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Finally, regarding Childress, plaintiff's claims appear to be based upon a theory of *respondeat superior*, and are therefore subject to dismissal. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (*respondeat superior* theory inapplicable in § 1983 cases). For the foregoing reasons, defendants Raymond, Bradford, Arnold, Simpson, Childress, and Halibower will therefore be dismissed from this action.

Finally, in Count IV, plaintiff alleges that his First Amendment rights are being violated because the jail's law library is inadequate. However, he does not allege that the alleged

8

deficiencies deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action seeking to vindicate constitutional rights. He therefore fails to state a claim under the First Amendment. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996), *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996). In addition, plaintiff's suggestion that Syler ignored him and/or was unresponsive to grievances fails to state an actionable constitutional claim. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983; grievance procedure is procedural right only and does not confer substantive right on inmate). Defendant Syler will therefore be dismissed from this action.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $3.11 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that defendants Hastings, Halibower, Raymond, Bradford, Arnold, Simpson, Childress, and Syler are **DISMISSED** from this case, without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process, or cause process to issue, upon defendants Lieutenant Reed, Captain Traschel, Corrections Officer Habtemariam, and Kristy Gonzalas in their individual capacities. Defendants shall be served by

9

issuance of summons and service by the U.S. Marshal's Office at the St. Louis County Justice Center.

**IT IS FURTHER ORDERED** that, in their individual capacities, defendants Reed, Traschel, Habtemariam, and Gonzalas shall reply to plaintiff's claims within the time provided by the applicable provisions of the Federal Rules of Civil Procedure.

Dated this 5th day of April, 2018.

*Ronnie L. White*
RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE